IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CHRISTOPHER GARRETT, #786065 | § | |
| VS. | § | CIVIL ACTION NO. 6:05cv493 |
| KENNETH PARTIN, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Christopher Garrett, a prisoner confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on December 22, 2005. The Plaintiff alleged that he was the victim of deliberate indifference to his serious medical needs and excessive use of force on January 22-23, 2004. Pursuant to an order of the Court, the prison system submitted a *Martinez* Report in response to the Plaintiff's claims. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (cited with approval by the Fifth Circuit in *Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986) and *Parker v. Carpenter*, 978 F.2d 190, 191-92 n.2 (5th Cir. 1992)). *See also Norton v. Dimazana*, 122 F.3d 286 (5th Cir. 1997). The Plaintiff filed objections to the *Martinez* Report. After considering the original complaint, *Martinez* Report and objections, the Court concluded that the Plaintiff's claims needed further development. On August 25, 2006, the Court conducted an evidentiary hearing, in

accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Plaintiff also submitted a post-hearing brief and exhibits on September 7, 2006.

The Plaintiff had a history of lower back problems before his arrival at the prison system in 1997. On January 22, 2004, he was confined in an upper level solitary confinement cell due to a prison disciplinary case. At approximately 2 P.M., he was experiencing extreme back pain, profuse sweating and immobility. He took Ibuprofen, but he still experienced pain. He asked an unidentified correctional officer to obtain medical help for him. The officer told him that he would call the medical department, but no one came. At approximately 5 P.M., he asked either Sgt. Sartin or Sgt. Adamcik for help, but none arrived. Later in the night, the Plaintiff sought help from another officer, Lt. Quinonez, Nurse Emsoff and Nurse Burns. He was routinely told help was being obtained and a crew being assembled to carry him to medical, but he still did not receive any help. At 1:30 A.M., a nurse told him again that a crew was being assembled. At 9 A.M., Captain Partin and Nurse Miller arrived on the scene. Captain Partin had two unidentified officers attempt to help the Plaintiff walk down the stairs. The Plaintiff cried out in pain and was unable to go down the stairs. Captain Partin told him that they would not carry him because he was too big. His request for a stretcher was denied. The Plaintiff slowly walked down the stairs while using the railing for support. He laid down on the floor when he reached the bottom. He was unable to sit in a wheel chair and was transported to the infirmary on a gurney. Tests were performed, and he was given morphine. He was transported to the University of Texas Medical Branch in Galveston. A bilateral laminectomy was performed on January 28, 2004. He was not paralyzed, but he had some motor nerve damage in the lower extremities. Dr. Kuykendall wrote that the Plaintiff had spinal stenosis, a preexisting condition, and that the delay in receiving medical care would not have changed the outcome.

The Plaintiff testified that he was suing all of the Defendants for deliberate indifference to his serious medical needs. He also sued Captain Partin and two unidentified officers for excessive use of force when they attempted to assist him down the stairs. He noted that he experienced extreme pain when they attempted to help him down the stairs. He characterized their actions as malicious. He testified that the delay in receiving medical care prolonged his pain and resulted in a loss of feeling and motor control in his lower left side extremities. Forcing him to walk resulted in right leg paralysis and numbness in his groin and anal areas. The Plaintiff testified that he wanted to dismiss his claims against Winnie Baker and Rhonda McQueen.

With respect to exhaustion of administrative remedies, the Plaintiff testified that he was unable to submit a Step 1 grievance until February 9, 2004, which was out-of-time. He testified that his grievance alleged deliberate indifference. He noted that he had only fifteen days from the time of the incident to submit a grievance. He was unable to submit the grievance earlier because of the surgery and because he was temporarily confined in the infirmary at the Polunsky Unit. He was not provided a pen because of security reasons. His grievance was returned without being processed because it was filed out-of-time. The Plaintiff testified that he did not pursue the matter because he thought his condition would improve. He did not keep a copy of his grievance. Later, he was unsuccessful in an attempt to obtain permission to file an out-of-time grievance. He filed a new grievance on September 22, 2005, which was not processed because it was submitted too late.

Regional Grievance Coordinator Chip Satterwhite testified under oath that there is no record of the Plaintiff submitting a grievance on February 9, 2004. He added that grievances which are returned unprocessed are logged, but there is no record of the Plaintiff having submitted a grievance. He testified that the Plaintiff submitted a grievance about a disciplinary case on February 5, 2004.

It was accepted late because of the Plaintiff being in Galveston and at a different unit.  It was further noted that the Plaintiff would have timely submitted a grievance about the incidents on January 22-23, 2004, if he had submitted one at the same time he submitted a grievance about the disciplinary case on February 5, 2004.

The Plaintiff testified that he explained why he was submitting the grievance late when he submitted it on February 9, 2004.  Nonetheless, it was returned to him.  Satterwhite testified that grievance records reveal that the Plaintiff submitted a number of grievances at the Michael Unit starting in March, 2004, about a variety of matters, but the first time any grievance is shown in the log about the incidents on January 22-23, 2004, was on September 22, 2005.

<u>Discussion and Analysis</u>

With respect to the request to voluntarily dismiss the claims against Defendants Baker and McQueen, a plaintiff is entitled to voluntarily dismiss a case prior to the service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs.  Fed. R. Civ. P. 41(a)(1).  The Defendants have not filed an answer or any other responsive pleading in the case.  The motion to dismiss should be granted.

The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e.  In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court.  *Booth v. Churner*, 532 U.S. 731 (2001).  *See also Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001).  The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners.

*Porter v. Nussle*, 534 U.S. 516, 524 (2002). Most recently, the Supreme Court reiterated that exhaustion is mandatory and will not be excused when an inmate fails to timely exhaust his administrative remedies. *Woodford v. Ngo*, 126 S.Ct. 2378 (2006). Inmates must comply with procedural rules. 126 S.Ct. at 2388.

It is noted that despite the clear language of the PLRA, intermediate appellate courts have created exceptions to the exhaustion requirement. The post-PLRA decisions by the Supreme Court have reversed the exceptions. In *Booth v. Churner*, the Court held that an inmate will not be excused from exhausting his administrative remedies even though the administrative process could not award him the monetary relief he sought. The *Booth* decision overruled an exception recognized by the Fifth Circuit in *Whitley v. Hunt*, 158 F.3d 882 (5th Cir. 1998). *See Wright v. Hollingsworth*, 260 F.3d at 358. In *Porter v. Nussle*, the Supreme Court overruled an exception created by the Second Circuit holding that the exhaustion requirement did not apply to excessive use of force cases.

In *Woodford v. Ngo*, the Supreme Court was confronted with a situation similar to the present case. A California inmate did not file his grievance within the fifteen day requirement, thus his grievance was rejected as untimely. Keying on the phrase in § 1997e(a) that an inmate may not bring an action "until such administrative remedies as are available are exhausted," the Ninth Circuit permitted the inmate to proceed because no remedies remained available. The Supreme Court reversed and held that inmates must comply with procedural rules. 126 S.Ct. at 2388. The Supreme Court explained that any other ruling would eliminate any incentive to comply with the rules and would effectively permit inmates to bypass available administrative remedies. *Id.* The decisions by the Supreme Court clearly stand for the proposition that the lawsuit should be dismissed for failure to exhaust available administrative remedies.

It is noted that the Fifth Circuit has issued a number of cases that focused on the phrase "as are available" in situations that have not been specifically addressed by the Supreme Court. In *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998), the Fifth Circuit keyed on the phrase to hold that administrative remedies are deemed exhausted when the time limits for the prison's response set forth in grievance procedures had expired. The opinion also noted the historical "substantial effort exception" to the exhaustion requirement. *Id.* In *Austin v. Ward*, 92 Fed. Appx. 80, 81 (5th Cir. 2004), the Fifth Circuit upheld the dismissal of a complaint for failure to exhaust because the inmate had not made a substantial effort to exhaust his administrative remedies in that he had not attempted to file a Step 2 grievance. The Fifth Circuit has also dealt with the phrase "as are available" in situations where inmates were unable to timely file grievances due to medical problems. In *Ferrington v. Louisiana Department of Corrections,* 315 F.3d 529, 532 (5th Cir. 2002), the Fifth Circuit rejected an inmate's argument that he should be excused from the exhaustion requirement due to blindness since his alleged blindness did not prevent him from filing his § 1983 lawsuit. In *Days v. Johnson*, 322 F.3d 863 (5th Cir. 2003), an inmate suffered a broken hand in a slip and fall case and was unable to timely file a grievance. He filed a grievance as soon as he was able to do so, but the prison system rejected it as untimely. *Id.* at 865. He then destroyed the grievance and filed a § 1983 lawsuit. *Id.* The Fifth Circuit concluded that Days had exhausted the administrative remedies that were personally available to him. In his post-hearing memorandum, the Plaintiff argued that he should be permitted to proceed in this case in light of *Days*. In *Parker v. Adjetey*, 89 Fed. Appx. 886 (5th Cir. 2004), an inmate was in a coma until after the fifteen day period and was unable to timely file a Step 1 grievance. He did not attempt to file a Step 1 grievance because the time deadlines had already expired. The Fifth Circuit affirmed the dismissal of the

complaint holding that he had not attempted to exhaust the administrative remedies that were available to him. *Id.* at 887-888.

In the present case, the Plaintiff's claims concern matters that occurred on January 22-23, 2004. His medical problems made him unable to immediately file a Step 1 grievance regarding his claims. At this juncture, one could argue that *Days* supports an argument that the Plaintiff should be permitted to proceed with his claims. However, on February 5, 2004, just fourteen days after January 22, 2004, he was able to file a grievance about a disciplinary case. Grievance records reveal that the grievance was accepted, albeit late, because of the Plaintiff's medical problems and being temporarily confined at a different unit. The Plaintiff did not attempt to file a grievance regarding the claims in the present lawsuit at that time. Instead, he allegedly submitted a Step 1 grievance on February 9, 2004, which was too late. He admitted that he did not pursue the matter further at that time. He did not attempt to file a Step 2 grievance. He also admitted that the Step 1 grievance that he tendered only concerned deliberate indifference. He did not file a grievance including allegations of excessive use of force. Over nineteen months later, on September 23, 2005, he filed another Step 1 grievance, which was returned as untimely.

In evaluating the exhaustion issue, the Plaintiff's testimony clearly reveals that he did not exhaust his administrative remedies. He made some effort to exhaust his administrative remedies about deliberate indifference but made no effort to exhaust his excessive use of force claim. Much like the situation in *Austin v. Ward*, the Plaintiff never made any effort to file a Step 2 grievance. He did not endeavor to substantially comply with the grievance procedures. With respect to an inability to timely file a Step 1 grievance due to his medical problems, he should not be excused for such failure in light of the fact that he was able to file a grievance about another matter on February

5, 2004, despite his limitations. Much like the situation in *Ferrington*, physical limitations did not prevent the pursuit of another matter. A Step 1 grievance about the claims in this case would have been filed timely if it had been filed on February 5, 2004. Moreover, the Plaintiff admitted that he abandoned any effort to pursue the matter at that time because he thought he would get better. Thus the facts of this case are akin to *Parker v. Adjetey*, and the Plaintiff should not be permitted to proceed in this case. This conclusion is reinforced by the decision in *Woodford v. Ngo*. The Plaintiff should not be permitted to proceed in this case because he did not exhaust his administrative remedies in that he failed to comply with administrative procedures for timely submitting his grievances. The lawsuit should be dismissed for failure to exhaust. Moreover, since the Plaintiff cannot exhaust his administrative remedies at this late date, the case should be dismissed with prejudice. It is accordingly

**ORDERED** that the Plaintiff's claims against Defendants Winnie Baker and Rhonda McQueen are **DISMISSED** without prejudice pursuant to Fed. R. Civ. P. 41(a). It is further

**ORDERED** that the Plaintiff's claims against the remaining Defendants are **DISMISSED** with prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e. All motions not previously ruled on are **DENIED**.

**So ORDERED and SIGNED this 14th day of September, 2006.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE